1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                  FOR THE EASTERN DISTRICT OF CALIFORNIA
10

| LINH N. LAM, | No. 2:15-CV-01922-KJM-CKD |
|---|---|
| Plaintiff, | |
| v. | ORDER |
| TARGET CORPORATION and DOES 1 through 50, inclusive, | |
| Defendant. | |

Plaintiff Linh Lam brings this age discrimination action against his former employer, Target Corporation ("Target"). *See* Marder Decl. Ex. 1 (Compl.), ECF No. 2-1. Target moves for summary judgment on all claims or, in the alternative, summary adjudication on sixteen issues related to the claims. *See* Mot., ECF No. 27; Mem. P. & A., ECF No. 28. Lam opposes the motion. Opp'n, ECF No. 34. After holding a hearing on the motion and permitting supplemental briefing to ensure a complete record, and for the reasons discussed below, the court GRANTS the motion for summary judgment.

I.     FACTUAL BACKGROUND

When considering a motion for summary judgment, the court relies on whatever facts are undisputed and otherwise considers the evidentiary record in the light most favorable to

/////

the party opposing the motion. *See, e.g.*, *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1202 (9th Cir. 2016). The following facts are undisputed unless otherwise noted.

A. Lam's Employment with Target

Lam began working as a Warehouse team member at Target's Woodland Distribution Center on September 27, 1995. Statement of Undisputed Facts ("SUF") 1, ECF No. 32. In that role, Lam unloaded freight on the De-palletization ("Depal") team. *Id.* Shortly after he was hired, Lam transferred from Depal into Stocking and Order Processing, now known as the Warehouse team. SUF 5. Lam's job duties as a Warehouse team member primarily involved processing orders sent in by Target stores, which meant he pulled merchandise and freight to be aggregated and delivered. SUF 6.

Lam worked on the Warehouse team until April 2008, when he transferred to the "MBP" (music, movies and break pack) team. SUF 9. Lam reported to six different Group Leaders while on the MBP team. SUF 11. After several years with the MBP team, Lam transferred back into general Warehouse in 2012, where he remained for his last few years of employment with Target. SUF 13. In his last two years in Warehouse, Lam reported to five different Group Leaders. SUF 14. Lam did not complain about any of the Group Leaders for the MBP or Warehouse team while at Target. SUF 12, 15.[1]

B. The Employment Agreement

At the time he was hired in 1995, Lam received and acknowledged Target's Team Member Handbook, which states in pertinent part: "All Target team members are employed 'at-will,' which means Target can terminate the employment relationship at any time for any reason not prohibited by law." SUF 2; Cody Decl. Ex. C (Handbook) at 9, ECF No. 34-6. Lam

---

[1] Lam disputes this fact by citing his own "disputed" fact. Statement of Disputed Facts ("SDF") 6, ECF No. 34-2. However, neither Lam's proffer nor the cited declaration create a material dispute, and Lam's deposition testimony directly supports the fact. *Compare* Lam. Dep. at 136:4–138:1, 138:2–9; 138:10–139:20; 139:21–140:21, 143:1–16, ECF No. 29-1, *with* Moore Decl., ECF No. 34-9. Throughout Lam's response to the statement of undisputed facts, Lam repeatedly "disputes" facts by citing disputed facts that neither relate to, nor controvert, the proffered undisputed fact. As noted, the court relies on those facts that, despite Lam's responses, are not subject to a material dispute.

2

acknowledged he was generally expected to follow the Handbook, Lam Dep. at 116:17–19, and that the at-will employment policy quoted above was Target's policy at the time of Lam's employment, *id.* at 118:21–119:6. Lam disputes whether his employment continued to be at-will after an initial ninety-day probationary period. *See* SDF 1; Opp'n at 5.

### C. Lam's Discipline and Termination

On September 3, 2014, Lam's Warehouse Group Leader, Brittany Miller, received a complaint from another Warehouse member that Lam handed off work for which he wrongfully took credit. SUF 45. Following this complaint, Miller and another Group Leader Greg Storz conducted a "seek to understand" meeting with Lam. SUF 46. Miller and Storz explained that multiple coworkers had complained about Lam handing off work in violation of Target policies. SUF 47. Lam did not dispute the allegations against him. SUF 48. Following the meeting, Miller sent communications to Human Resources and other leaders in the Distribution Center, noting Lam had previously received coaching and corrective action for the same conduct. SUF 49; Hughes Decl. ¶ 30, Ex. Q at 2–4, ECF No. 31-17 (Miller's e-mail to Human Resources explaining "[i]t appears that [Lam] has already been put on CA [corrective action] for this exact thing but on a smaller scale last summer"). After additional team members complained to Miller about Lam's conduct that evening, Miller relayed the additional complaints to Human Resources and Distribution Center leaders. SUF 50. Target terminated Lam's employment on September 4, 2014 for "gross misconduct." SUF 52; *see also* SUF 36–41.

## II. PROCEDURAL BACKGROUND

Lam filed this case in the Superior Court of the State of California for the County of Yolo on July 23, 2015. Compl. Target removed the case to this court on August 11, 2015, on the basis of the court's diversity jurisdiction. Notice of Removal, ECF No. 2.

Lam brings the following claims: (1) age discrimination under California's Fair Employment and Housing Act ("FEHA"), California Government Code §§ 12900–12996; (2) wrongful termination in violation of public policy under FEHA; (3) breach of implied covenant of good faith and fair dealing; (4) breach of implied contract of continued employment;

1 | (5) intentional infliction of emotional distress ("IIED"); and (6) negligent infliction of emotional distress ("NIED"). Compl. ¶¶ 24–75.

On October 18, 2016, Target moved for summary judgment on all claims or, in the alternative, for summary adjudication on sixteen issues related to the claims. *See generally* Mem. P. & A. Lam filed an opposition one day late, on November 5, 2016. *See* Opp'n. Because the delay was harmless, the court considers the opposition here. Target replied. Reply, ECF No. 35. The court held a hearing on the motion on December 5, 2016, at which Vicky Cody appeared for Lam and Coby Turner and Laura Maechtlen for Target. ECF No. 43. At hearing, the court permitted Lam to supplement the record with errata to his opposition filings. *Id.*; Notice of Errata, ECF No. 44.

III. <u>STANDARD</u>

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts"). Moreover, "the requirement is that there be no *genuine* issue of material fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing

| | |
|---|---|
| 1 | law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48 |
| 2 | (emphasis in original). |
| 3 | In deciding a motion for summary judgment, the court draws all inferences and |
| 4 | views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at |
| 5 | 587–88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a |
| 6 | whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine |
| 7 | issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv.* |
| 8 | *Co.*, 391 U.S. 253, 289 (1968)). |
| 9 | A court may consider evidence as long as it is "admissible at trial." *Fraser v.* |
| 10 | *Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). "Admissibility at trial" depends not on the |
| 11 | evidence's form, but on its content. *Block v. City of L.A.*, 253 F.3d 410, 418–19 (9th Cir. 2001) |
| 12 | (citing *Celotex Corp.*, 477 U.S. at 324). The party seeking admission of evidence "bears the |
| 13 | burden of proof of admissibility." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir. |
| 14 | 2002). If the opposing party objects to the proposed evidence, the party seeking admission must |
| 15 | direct the district court to "authenticating documents, deposition testimony bearing on attribution, |
| 16 | hearsay exceptions and exemptions, or other evidentiary principles under which the evidence in |
| 17 | question could be deemed admissible . . . ." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385–86 |
| 18 | (9th Cir. 2010). However, courts are sometimes "much more lenient" with the affidavits and |
| 19 | documents of the party opposing summary judgment. *Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240, |
| 20 | 1243 (9th Cir. 1979). |
| 21 | The Supreme Court has taken care to note that district courts should act "with |
| 22 | caution in granting summary judgment," and have authority to "deny summary judgment in a case |
| 23 | where there is reason to believe the better course would be to proceed to a full trial." *Anderson*, |
| 24 | 477 U.S. at 255. A trial may be necessary "if the judge has doubt as to the wisdom of terminating |
| 25 | the case before trial." *Gen. Signal Corp. v. MCI Telecomms. Corp.*, 66 F.3d 1500, 1507 (9th Cir. |
| 26 | 1995) (quoting *Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994)). This may be the case |
| 27 | "even in the absence of a factual dispute." *Rheumatology Diagnostics Lab., Inc v. Aetna, Inc.*, |
| 28 | |

No. 12-05847, 2015 WL 3826713, at *4 (N.D. Cal. June 19, 2015) (quoting *Black*, 22 F.3d at 572); *accord Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1285 (11th Cir. 2001).

IV. DISCUSSION

    A. Age Discrimination under FEHA (Claim 1)

California has adopted a three-stage burden-shifting test for adjudicating discrimination claims under FEHA. *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 354 (2000) (citing *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). "This so-called *McDonnell Douglas* test reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially." *Guz*, 24 Cal. 4th at 354. Under this framework, the employee has the initial burden to establish a prima facie case of discrimination; the burden then shifts to the employer to present a legitimate, non-discriminatory reason for the adverse employment decision; and the employee must then show the employer's reasons for the action are a pretext for discrimination. *Id.* at 354–56. To establish a prima facie case, "[g]enerally, the plaintiff must provide evidence that (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." *Id.* at 355.

Here, Target argues Lam has not established prima facie element (2), requiring that Lam was qualified for the position he held, and element (4), requiring some other circumstance suggesting discrimination. Mem. P. & A. at 16–18. Target further argues that, even if Lam can satisfy his prima facie burden as to all four elements, Lam cannot show Target's proffered reason was pretext for age discrimination. *Id.* at 17–18. For the reasons explained below, element (4) is dispositive; therefore the court need not address the balance of Target's arguments.

A plaintiff may support an inference of discriminatory motive by showing his duties were transferred to a substantially younger employee or employees with equal or lesser qualifications. *Ewing v. Gill Industries, Inc.*, 3 Cal. App. 4th 601, 609 (1992). This element,

however, "has been treated with some flexibility," *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 917 (9th Cir. 1996), and courts may "require instead that the plaintiff show through circumstantial, statistical, or direct evidence that the discharge occurred under circumstances giving rise to an inference of age discrimination," *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1421 (9th Cir. 1990). "Still, there must be evidence supporting a rational inference that intentional discrimination, on grounds prohibited by the statute, was the true cause of the employer's actions." *Guz*, 24 Cal. 4th at 383.

Lam makes two arguments to support a sufficient inference of discrimination to survive summary judgment, neither of which establishes a genuine dispute as to this necessary element. First, Lam argues he was subject to additional scrutiny because of his age. Opp'n at 4. But Lam does not point to any evidence to support this claim. The record shows Lam was subject to a consistent series of coaching conversations, critical performance reviews and corrective actions since his move to the MBP team in early 2008 and continuing after his return to the Warehouse team in 2012. *See* Hughes Decl. ¶¶ 7–12, 14–19, 20–21; *id.* Ex. B, ECF No. 31-2 (performance coaching notes); *id.* Exs. C–H, ECF Nos. 31-3–31-8 (annual performance reviews); *id.* Exs. I–J, ECF Nos. 31-9–10 (corrective action notices). Although Lam was forty-two when he was terminated, he was approximately thirty-five years old when he received the first of a series of annual reviews that noted "Needs Improvement" in productivity. *Id.* Exs. C–D, F–H; SUF 57. FEHA expressly prohibits discrimination on the basis of age, and clarifies that "age" refers to a person over forty. Cal. Gov't Code § 12940(a); Cal. Gov't Code § 12926(b); *see also Stevenson v. Superior Court*, 16 Cal. 4th 880, 928 n.6 (1997) (citing a previous version of section 12941, explaining "FEHA's age discrimination prohibition applies only to employees 'over the age of 40'"); *Hersant v. Dep't of Soc. Servs.*, 57 Cal. App. 4th 997, 1003 (1997) (plaintiff must show, at the time of the adverse action, he was forty years of age). Given that almost all of this "additional scrutiny," assuming it occurred, took place before Lam turned forty in or about 2012, Lam has not provided any evidence that would suggest Target was more critical of his work because of his protected status once he did turn forty. Similarly, Lam points to no evidence that similarly situated, younger employees were treated more favorably. *See Joseph v. Target Corp.*, 2:12-CV-

7

01962-KJM, 2015 WL 351444, at *15 (E.D. Cal. Jan. 23, 2015) (granting summary judgment because plaintiff's evidence did not support claim that younger employees received less critical treatment). In sum, the record contains insufficient evidence to support any circumstance suggesting discriminatory motive.

Second, Lam argues longer-term, older employees were consistently terminated as part of Target's effort to "clean house." Opp'n at 5–6. But Lam's proffered declaration of Sonya Moore, a former supervisor at Lam's distribution center, does not support Lam's assertion. *See* Moore Decl., ECF No. 34-9. In her declaration, Moore describes a recent "change of direction" and an effort to "clean house" at Target that led to the rapid termination of salaried employees. *Id.* ¶¶ 5–6. As part of this purported change, salaried employees were cited for "nit-picky" violations, many of which did not previously result in adverse action. *Id.* Moore noticed that "many" terminated employees were long-term employees and "some" of them employees were above the age of forty. *Id.* at 7–8.

Moore's account is unhelpful to Lam's claim for three reasons. First, Lam's alleged mistreatment preceded the pattern Moore described. Moore noticed a pattern that occurred "during the last few years" of her employment. *Id.* ¶ 5. Given that Moore was a supervisor with Target from 2007 through 2014, *id.* ¶ 1, she appears to be describing a pattern that started several years after Lam first received critical reviews in 2008. Second, Moore describes a pattern among salaried rather than hourly employees. To establish discrimination, Lam must show similarly situated employees were not discharged for conduct similar to his. *McGrory v. Applied Signal Tech., Inc.*, 212 Cal. App. 4th 1510, 1535–36 (2013) (citing *Lathem v. Dep't of Children and Youth Servs.*, 172 F.3d 786, 792 (11th Cir. 1999)) ("No inference of discrimination reasonably arises when an employer has treated differently different kinds of misconduct by employees holding different positions."). Here, given the likely differences in roles and responsibilities, demographics and employment agreements between salaried and hourly employees, Moore's account, completely unsupported by any statistical information, does not provide evidence of similarly situated employees. *Id.* (noting plaintiff, a manager, was differently situated than his subordinates). In any event, Lam provides no evidence that his conduct was

comparable to that of salaried employees; Moore does not explain or give any examples of the "nit-picky" violations, and the court is not able to compare Lam's conduct to the supervisors' conduct that led to adverse action. Finally, Moore's "pattern" provides no evidence that older employees were more likely than younger employees to be terminated. Instead, she only asserts "some" terminated employees were older than forty. *Id.* at 7–8. Because nearly half of the Warehouse team was older than forty, SUF No. 57, Moore's statement is unremarkable and unhelpful to Lam. Moore's generalized observations fall far short of the "stark pattern" needed to establish a prima facie case of discrimination. *Palmer v. United States*, 794 F.2d 534, 539 (9th Cir. 1986) (citing *Gay v. Waiters' and Dairy Lunchmen's Union*, 694 F.2d 531, 552 (9th Cir. 1982)); *cf. Schechner v. KPIX-TV*, 686 F.3d 1018, 1022 (9th Cir. 2012) (expert statistician's conclusion, based on analysis of entire pool of employees, that "those individuals laid off, as a group, are older than the group of those not laid off, and the disparity between the two groups is statistically significant" established prima facie burden).

Lam has not presented a prima facie case of age discrimination. The court GRANTS Target's motion on this claim.

B. <u>Wrongful Termination under FEHA (Claim 2)</u>

Lam's argument regarding his second claim relies on the same evidence of discrimination as his first. *See* Opp'n at 7 (citing SDF 6 (citing Moore Decl.)). Because that evidence does not establish a necessary element of a prima facie case of discrimination, this claim also cannot survive summary judgment. *See, e.g.*, *Shoemaker v. Myers*, 52 Cal. 3d 1, 24 (1990) (dismissing claim of wrongful termination as duplicative of others brought by plaintiff). The court GRANTS Target's motion on this claim.

C. <u>Breach of Implied Covenant of Good Faith and Fair Dealing (Claim 3)</u>

Under California law, in the absence of any agreement to the contrary, employment may be terminated at any time, with or without cause. *Guz*, 24 Cal. 4th at 335; Cal. Lab. Code § 2922. "While the statutory presumption of at-will employment is strong . . . . [and] prevails where the employer and employee have reached no other understanding . . . it does not overcome [the parties'] fundamental [] freedom of contract to depart from at-will employment."

9

*Guz*, 24 Cal. 4th at 336 (internal quotation omitted). Such an agreement may be implied by the parties' conduct based on the "totality of the circumstances" including the following factors: "the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged." *Id.* at 336–37 (quoting *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 680 (1988)). "Courts seek to enforce the actual understanding of the parties to an employment agreement," and "where the undisputed facts negate the existence . . . of the contract claimed, summary judgment is proper." *Id.* at 337 (internal quotations omitted).

Lam does not dispute he was hired as an at-will employee. *See* SDF 1. Indeed, the Team Member Handbook Lam received when he was hired clearly defined Lam's employment as "at-will" and explained that Target "[does] not guarantee employment for any particular length of time or limit how that employment may end." Handbook at 9. Instead, Lam disputes whether his employment continued to be "at-will" after an initial ninety-day probationary period and argues Target provided information that created an implied contract between Target and its employees. SDF 1; Opp'n at 5.

The evidence does not support the existence of an implied contract that overrides Lam's at-will agreement. Lam first points to the Handbook itself, which generally discusses "careers" available after a probationary period, as well as language from the Handbook, which states "[w]e hope you'll be at Target a long time." *See* Handbook. Target's aspirational language is not enough to alter the nature of employment. *See, e.g.*, *Goldstein v. Lackard*, A116945, 2008 WL 4495707, at *7 (Cal. Ct. App. Oct. 8, 2008) (unpublished) ("[The employer's] optimistic attitude regarding [the employee's] future with the firm is not inconsistent with at-will employment . . . . [E]mployers generally hire people they hope to retain for a substantial period of time. In no way does this hope or expectation affect the presumption that the employment relationship is at will.")[2]. In any event, the Handbook specifically states no portion should be

---

[2] Federal courts may consider such unpublished opinions but are not bound by them. *See Nunez v. City of San Diego*, 114 F.3d 935, 942 n.4 (9th Cir. 1997).

construed as altering the at-will relationship. Handbook at 9 ("[T]eam members should not[] interpret any verbal or written statement, policies, practices, or procedures, including this handbook, as altering their at-will status."). Additionally, the Handbook clearly explains that employment continues to be at-will after the ninety-day probationary period. *Id.* at 23 ("Both during and after this 90 calendar day period, Target may terminate your employment at any time for no reason or for any reason not prohibited by law."). The Handbook thus repeatedly rebuffs Lam's argument.

Lam next cites depositions from supervisors Greg Storz and Jennifer Hunter in which they explain they are not aware of Target employees being terminated without cause. Storz Dep. at 59:9–24, ECF No. 34-7; Hunter Dep. at 78:4–79:12, ECF No. 34-8. But this deposition testimony is consistent with Target's interpretation of the nature of the employment relationship; an at-will employee can be removed with or without cause, and an employee's removal for cause does not undermine the assertion that he was an at-will employee. *Guz*, 24 Cal.4th at 345 (holding that company president's testimony that he understood that the defendant terminated people only for "good reason" was insufficient as a matter of law to permit a finding that the company had contracted away its right to discharge at-will); *Doubt v. NCR Corp.*, No. C 09-5917 SBA, 2014 WL 3897590, at *12 (N.D. Cal. Aug. 7, 2014) (explaining that an "unwritten policy or practice of terminating [] employees only for cause" does not create an implied contract to only terminate for cause).

Finally, although Lam does not point to this factor, *Foley* also directs courts to examine the employee's longevity of service. *Foley*, 47 Cal. 3d at 680 (citing *Pugh v. See's Candies, Inc.*, 116 Cal. App. 3d 311, 327 (1981)). While Lam's nineteen-year employment relationship with Target is a factor that cuts in his favor, this factor standing alone does not support finding an implied contract. *Guz*, 24 Cal. 4th at 341–42 ("[A]n employee's mere passage of time in the employer's service, even where marked with tangible indicia that the employer approves the employee's work, cannot alone form an implied-in-fact contract that the employee is no longer at will."). Based on the "totality of circumstances" of the record before the court, no reasonable juror could find the parties had an "actual understanding" altering Lam's at-will status.

11

1  *Id.* at 337. Because the court finds no implied contract between Lam and Target, Lam cannot

2  survive summary judgment on a claim that relies on its existence.

3  The court GRANTS Target's motion on this claim.

4  D.  Breach of Implied Covenant of Continued Employment (Claim 4)

5  Lam's argument regarding his fourth claim relies on the same evidence as his third

6  to support a genuine dispute as to the existence of an implied employment contract. *See* Opp'n at

7  8. Because "[t]here cannot be a valid express contract and an implied contract, each embracing

8  the same subject but requiring different results . . . [t]he at-will agreement preclude[s] the

9  existence of an implied contract requiring good cause for termination." *Starzynski v. Capital Pub.*

10  *Radio, Inc.*, 88 Cal. App. 4th 33, 38 (2001) (internal quotation marks omitted) (quoting *Camp v.*

11  *Jeffer, Mangels, Butler & Marmaro*, 35 Cal. App. 4th 620, 630 (1995)); *see also Guz*, 24 Cal.4th

12  at 340 n.10 ("[M]ost cases applying California law . . . have held that an at-will provision in an

13  express written agreement, signed by the employee, cannot be overcome by proof of an implied

14  contrary understanding"). Because the court concludes above no reasonable juror could find such

15  an agreement existed, this claim cannot survive either.

16  The court GRANTS Target's motion on this claim.

17  E.  Intentional Infliction of Emotional District (IIED) (Claim 5)

18  "The elements of a prima facie case of intentional infliction of mental distress are

19  (1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the

20  probability of causing emotional distress, (3) severe emotional suffering and (4) actual and

21  proximate causation of the emotional distress." *Bogard v. Emp'rs Cas. Co.*, 164 Cal. App. 3d

22  602, 616 (1985); *Agarwal v. Johnson*, 25 Cal. 3d 932, 946 (1979). Target argues Lam has

23  sufficiently shown neither Target's outrageous conduct nor Lam's severe emotional suffering.

24  Mem. P. & A. at 21–22.

25  As to the first element of the prima facie case, outrageous conduct is conduct that

26  is "so extreme as to exceed all bounds of that usually tolerated in a civilized community" and "so

27  extreme and outrageous 'as to go beyond all possible bonds [sic] of decency, and to be regarded

28  as atrocious, and utterly intolerable in a civilized community.'" *Bogard*, 164 Cal. App. 3d at 616

1  (quoting *Cervantez v. J.C. Penney Co.*, 24 Cal. 3d 579, 593 (1979); *Alcorn v. Anbro Eng'g, Inc.*,
2  2 Cal. 3d 493, 499 n.5 (1970)). "Behavior may be considered outrageous if a defendant [] abuses
3  a relation or position which gives him power to damage the plaintiff's interest; [] knows the
4  plaintiff is susceptible to injuries through mental distress; or [] acts intentionally or unreasonably
5  with the recognition that the acts are likely to result in illness through mental distress." *Newby v.*
6  *Alto Riviera Apartments*, 60 Cal. App. 3d 288, 297 (1976). For this first element, Lam does not
7  point to any action or comment made by Target or its employees other than its termination
8  decision. *See* Opp'n at 8. Lam argues Target's outrageous conduct includes "wrongful
9  termination based on age" and "[c]onspiring to circumvent Plaintiff's right to be free from age
10 discrimination." *Id.* As an initial matter, both of these arguments can be rejected on the grounds
11 that both rely on age discrimination by Target, for which Lam has not shown a genuine dispute
12 exists for the reasons discussed above. Even assuming that the termination was based on his age,
13 Lam points to no authority supporting the proposition that termination can by itself be
14 "outrageous" without some additional action or comments by the employer, which Lam has not
15 provided; the court finds none on its own. In addition, Lam provides no evidence supporting his
16 assertion that Target somehow conspired against Lam. The dearth of evidence cannot raise a
17 genuine dispute of material facts as to the first element of Lam's prima facie case.

18         As to the third element, severe emotional suffering means "emotional distress of
19 such substantial quantity or enduring quality that no reasonable man in a civilized society should
20 be expected to endure it." *Bogard*, 164 Cal. App. 3d at 617 (quoting *Fletcher v. W. Natl. Life Ins.*
21 *Co.*, 10 Cal. App. 3d 376, 397 (1970)). For this element, Lam asserts he "has been diagnosed as
22 suffering from extreme emotional distress." SDF 6. Lam provides no evidence of his diagnosis,
23 although he does cite a worker's compensation agreement. Cody Decl. Ex. G, ECF No. 34-10.
24 While the agreement lists various "matters" the parties agreed to settle, such as "earnings,"
25 "temporary disability" and "future medical treatment," the agreement does not otherwise show
26 that Lam received any diagnosis. *Id.* Lam points separately to an excerpt from his deposition at
27 which he explained he had not told his family he lost his job and that "it's really messing me up."
28 SDF 6; Lam Dep. at 366:12–13, ECF No. 44-2. This sparse excerpt does not support Lam's

assertion that he received some type of diagnosis.  Diagnosis aside, Lam further explained that "messed up" referenced his inability to find another job.  Lam Dep. at 365:25–366:1–3 ("I was messed up. I couldn't get back into the job.  All I know how to do was Target warehouse.  I couldn't find another job.").  Mere unemployment is not that type of "emotional distress of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it."  *Bogard*, 164 Cal. App. 3d at 617.  Lam's unemployment, standing alone, is not sufficient to establish a genuine dispute as to this element here.

Lam has not shown there is a genuine factual dispute regarding two necessary elements for his IIED claim.  The court GRANTS Target's motion on this claim.

F. <u>Negligent Infliction of Emotional Distress (NIED) (Claim 6)</u>

The negligent causing of emotional distress "is not an independent tort but the tort of negligence," and the "traditional elements of duty, breach of duty, causation, and damages apply."  *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal. 3d 583, 588 (1989).  Although California law distinguishes between a "bystander" theory and a "direct victim" theory of negligent infliction of emotional distress, both similarly require "serious emotional distress."  *Burgess v. Super. Ct.*, 2 Cal. 4th 1064, 1073 n.6 (1992).  Because California law does not require physical injury, the "serious emotional distress" requirement helps "guard against the litigation of trivial or fraudulent claims."  *Id.*; *Molien v. Kaiser Found. Hosps.*, 27 Cal. 3d 916, 928–30 (1980).  "[S]erious mental distress may be found where a reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case."  *Molien*, 27 Cal. 3d at 928 (quoting *Rodrigues v. State,* 52 Haw. 156, 172 (1970)); *see also* Judicial Council of California Civil Jury Instruction 1620 ("Serious emotional distress exists if an ordinary, reasonable person would be unable to cope with it.").

Here, Lam copies his allegations and argument from his discussion of his IIED claim to that of his NIED claim.  *Compare* Compl. ¶ 66 *and* Opp'n at 8 *with* Compl. ¶ 73 *and* Opp'n at 9.  Lam's argument fails for two reasons.  First, Lam's claims of negligence are based on the same allegations of intentional conduct that underlie his IIED claim.  *See* Compl. ¶ 73 (alleging Target's "[w]rongful termination based on age" and "[c]onspiring to circumvent

14

[Lam's] right to be free from age discrimination"). But intentional conduct cannot support a claim for negligence. *Semore v. Pool*, 217 Cal. App. 3d 1087, 1105 (1990) (affirming dismissal of NIED claim where "any actions by the employer were intentional, not negligent"). Second, Lam has provided no additional basis to find a disputed fact as to his "serious emotional distress." *Burgess*, 2 Cal. 4th at 1073 n.6. As with his IIED claim, Lam has provided no evidence supporting his alleged "diagnosis" and Lam's deposition testimony is wholly inadequate to support this necessary finding. For both of these reasons, Lam has not supported his NIED claim so as to survive summary judgment.

The court GRANTS Target's motion on this claim.

### G. Punitive Damages

Because the court grants summary judgment on each of Lam's claims upon which his prayer for punitive damages relies, the court need not separately address his request for this relief. *Oliver v. Microsoft Corp.*, 966 F. Supp. 2d 889, 899 n.4 (N.D. Cal. 2013) (after granting defendants' motion for summary judgment on former employee's claims, declining to address defendant's motion regarding punitive damages).

## V. CONCLUSION

As explained above, Lam has not provided sufficient evidence to raise a genuine dispute of material fact as to necessary elements of each his claims. Accordingly, the court GRANTS Target's motion on all claims.

This order resolves ECF No. 27.

IT IS SO ORDERED.

DATED: September 19, 2017.

_____
UNITED STATES DISTRICT JUDGE